ART HAGER AND VERNA HAGER, HUSBAND AND WIFE, PLAINTIFFS AND APPELLANTS, v. LILA TANDY, ADMINISTRATRIX OF THE ESTATE OF W. G. TANDY, DECEASED, ROBERT BOUCHER AND LILA TANDY, INDIVIDUALLY, DEFENDANTS AND RESPONDENTS.

No. 10991.
Submitted December 4, 1965. Decided December 30, 1965.
410 P.2d 447.

Loble & Picotte, Conrad B. Fredericks, Charles A. Smith (argued), Gene A. Picotte (argued), Helena, for appellants.

William B. Sherman, Douglas L. Anderson (argued), Conrad, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a summary judgment entered in the District Court of Pondera County, Montana.

It appears that plaintiffs filed their complaint on August 24, 1964, alleging that W. G. Tandy at all times pertinent was the owner of certain described lands in Pondera County; that on April 17, 1941, he orally promised plaintiffs that if they would enter upon and farm the lands in a proper manner and give to Tandy a percentage of the net income from the farm that upon his death he, Tandy, would leave a will giving all of his right, title and interest in the property to the plaintiffs; that the offer was accepted and plaintiffs carried it out; that on July 21, 1958, Tandy without the knowledge of the plaintiffs, conveyed the property to Robert W. Boucher, one of the defendants, who had fraudulently induced Tandy and conspired with him to deprive plaintiffs of the benefits of the oral contract; that Tandy died on May 24, 1959, intestate, thereby breaching the oral contract to make a will; and that Boucher paid no consideration to Tandy for the lands and the transfer was fraudulent.

As to Lila Tandy it was alleged that she was appointed administratrix of the estate of W. G. Tandy; that she did not list the lands as property of the estate; and that plaintiffs had no knowledge of the fact that the lands did not belong to W. G. Tandy up until the commencement of the probate; that plaintiffs demanded of Boucher that he convey the lands to them but Boucher conveyed the lands to Lila Tandy and she now holds the same in her name and refuses to deed them to plaintiffs. Further that the plaintiffs have been in equity the lawful owners of the lands ever since the death of W. G. Tandy; that no consideration was given for either of the transfers and they were fraudulently made; that there was a contract in existence between themselves and W. G. Tandy; and that Tandy failed to fulfill the terms thereof at the time of his

death and breached the terms thereof while the plaintiffs fully performed everything required of them.

Plaintiffs prayed that the court find W. G. Tandy was the owner of the property at the time of his death; that there was a contract in existence between plaintiffs and W. G. Tandy whereby Tandy was to transfer by will the property to plaintiffs at the time of his death; that plaintiffs are entitled to a deed to the lands; and for other and further proper relief.

Defendants filed a motion to dismiss, alleging, (1) that Lila Tandy had been discharged as administratrix on June 11, 1962; (2) the complaint failed to state a claim upon which relief can be granted; and, (3) the right of action accrued more than five years prior to the commencement of the action and was barred by section 93-2604, subd. 1, R.C.M.1947, or section 93-2607, subd. 4, R.C.M.1947.

The motion was set for hearing and thereafter continued by an order of the district court. The court in its order gave notice that the motion would be treated as a motion for summary judgment and that the court would hear testimony and accept further evidence in support of, and in opposition to the motion.

Pursuant to the continuance, the matter came on for hearing before the court and by stipulation was submitted on written briefs and certain records and documents were made a part of the record, consisting of abstracts of title, probate file in the Tandy estate; court file in the matter of the termination of the joint tenancy of W. G. Tandy; court file in foreclosure action of the Farmers State Bank of Conrad v. Tandy and his wife; and contract for sale of real estate and personal property dated March 17, 1960, between the Bouchers and Lila Tandy. It was also stipulated that the court could consider interrogatories and answers thereto, admissions and other documentary evidence in support of and in opposition to the motion.

The district court thereafter entered an order granting the

motion to dismiss and entered summary judgment in favor of the defendants and this appeal followed.

Plaintiffs specify error by the district court in entering its order dismissing the action on the ground that the complaint failed to state a claim against the defendants upon which relief can be granted, and, secondly, in making and entering its finding that the defendants are entitled to summary judgment as a matter of law.

Before we proceed further, it should be pointed out that W. G. Tandy and Lila Tandy are the father and mother of Verna G. Hager, one of the plaintiffs; Art Hager being the Tandy's son-in-law. The Tandys also were parents of Billie I. Boucher, wife of defendant Robert W. Boucher.

Rule 56(c) M.R.Civ.P. provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The abstracts of title before the district court show that the lands involved in this action were originally in two parcels. One parcel was distributed under decree of distribution filed November 28, 1938, to Loren Closson, Lila Tandy and Nina Berland, an undivided one-third to each. On June 20, 1939, Closson quitclaimed his undivided interest to Nina Berland.

As to the other parcel the original patentee on April 9, 1941, conveyed a two-thirds interest therein to Nina Berland and one-third interest to Lila Tandy.

Thus, on April 9, 1941, all the lands involved in this action were owned two-thirds by Nina Berland, one-third by Lila Tandy.

On September 7, 1944, Nina Berland conveyed her undivided two-thirds interest in all the lands to Willis G. Tandy and Lila Tandy, as joint tenants. On February 1, 1954, Willis G. Tandy, also known as W. G. Tandy, and Lila Tandy conveyed

the lands to Nina Berland, and on February 2, 1954, Nina Berland conveyed all the lands to Willis G. Tandy and Lila Tandy, his wife, as joint tenants with right of survivorship and not as tenants in common.

So far as the record title is concerned this record shows that the first appearance of W. G. Tandy in the chain of title was on September 7, 1944, and then he appears as a joint tenant with his wife to an undivided two-thirds interest in the lands. Not until February 2, 1954, do the records show an interest in all the lands and then his interest is a joint tenancy with his wife.

Plaintiffs alleged Tandy was the owner of the lands, the records show otherwise.

From the abstracts of title it further appears that the Tandys mortgaged the lands to the Farmers State Bank of Conrad on April 5, 1956, to secure the sum of $23,000. A judgment in the amount of $15,208.74 was docketed on October 15, 1957, against W. G. Tandy. A judgment in the amount of $7,894.46 was docketed on October 15, 1957, against W. G. Tandy and Lila Tandy. A judgment in the amount of $10,731.90 was docketed on October 15, 1957, against Loyde E. and W. G. Tandy. A federal tax lien was filed on March 19, 1958, against the Tandys for $546.96.

An action to foreclose the mortgage of April 5, 1956, was filed by the bank on April 1, 1958, and a judgment and decree was entered on June 23, 1958, providing for sheriff's sale of the lands to cover the aggregate sum of $27,200.84 due under the mortgage, and the decree providing for payment of this amount from the proceeds of the sale, and if any surplus remained to pay the federal tax lien and the three judgments before referred to in order of their priority.

On July 21, 1958, the Tandys conveyed the property to Robert W. Boucher and Billie I. Boucher, husband and wife, as joint tenants.

On July 23, 1958, satisfactions of all three judgments were

filed, together with satisfaction of the foreclosure judgment of $27,200.84, and on July 31, 1958, the federal tax lien was released.

On September 17, 1958, the Bouchers mortgaged the lands to The Federal Land Bank of Spokane to secure the sum of $32,500.00.

On March 17, 1960, the Bouchers entered into a contract for the sale of the real estate and certain personal property to Lila Tandy, the purchase price to be the sum of $62,967.68.

The principal sums of the foreclosure judgment, the other three judgments and the federal tax lien, without adding accrued interest, amounted to the sum of $61,582.90.

From the answers of Boucher to plaintiff's interrogatories he states the consideration for the conveyance was payment of the debts of the Tandys which were liens upon the lands, amounting to approximately $60,000.00. He further stated that he and his wife had been paid up to October 1, 1964, the sum of $18,067.69 covering principal and interest as provided in the contract. He further stated that he and his wife paid the taxes for the years 1958 and 1959 on the property, and they had verbally leased the lands after the conveyance from the Tandys back to the Tandys at an annual rental of one-half the crop and had received $5,443.67 as their share of income in 1958 and $5,142.48 in 1959 from the lease. He further stated that he harvested the crop in 1959 because of the death of W. G. Tandy.

Plaintiffs alleged that Boucher paid no consideration and the transfer was fraudulent. No evidence was offered on the part of plaintiffs to controvert the above fact statements though the court by its order stated it would hear testimony and accept further evidence at the hearing on the motion.

The probate file shows that Lila Tandy was discharged as administratrix on June 11, 1962. It is true that the lands were not listed in the estate because they were at that time owned by the Bouchers.

Plaintiffs alleged that ever since the death of W. G. Tandy they had been in equity the lawful owners of the lands. During argument it was stated, without any contradiction, that in 1960 the plaintiffs entered into a written lease with Lila Tandy for these lands for a term of five years, the lease expiring in 1965.

It would appear to us that on a motion for summary judgment the formal issues presented by the pleadings are not controlling and the court must consider the depositions, answers to interrogatories, and admissions on file, oral testimony and exhibits presented. See Daniels v. Paddock, 145 Mont. 207, 399 P.2d 740.

We stated in Silloway v. Jorgenson, 146 Mont. 307, 406 P.2d 167 (quoting from 6 Moore Fed.Prac.2d § 56.15, p. 2346) with reference to Rule 56, that " 'the party opposing motion must present facts in proper form—conclusions of law will not suffice; and the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicions.' "

"It has been stated that the court should take the pleadings as they have been shaped to ascertain what issues of fact they make and then consider the * * * depositions, admissions, answers to interrogatories and other similar material to determine whether any of the issues are real and genuine. On such a motion the court considers the entire setting of the case and all papers of record." 3 Barron & Holtzoff, § 1236.

Considering then the entire setting of this case, what does it show? Basically, that W. G. Tandy never had such ownership of the property that if the alleged agreement were proved it could have been performed; that the lands became heavily encumbered and to clear the outstanding liens they were conveyed to the Bouchers who paid off the liens and thereafter sold it back to the surviving widow, Lila Tandy, upon a contract; that the amounts required to clear the liens paid by Boucher and the sale price evidenced by the contract,

clearly indicate the property was sold back on the contract for the amount required to clear the liens, and therefore constitutes no indicia of fraud; the execution of a written lease by the plaintiffs with Lila Tandy was an acknowledgment of her title; no effort on the part of plaintiffs to produce any proof controverting that produced by defendants; and a long delay in prosecuting the contended claim.

We cannot ascertain from this record for what particular reasons the court granted summary judgment, but we can state that it was correct in doing so.

In our opinion there is no genuine issue as to any material fact; the allegations contained in the complaint are shown to be untrue by uncontroverted documentary evidence; the plaintiffs' claim for relief lacks validity and in the face of the documentary proofs offered by defendants is incredible. Finally, the recognition of Lila Tandy's title and the long delay in asserting a claim makes the plaintiffs' entire case preposterous.

The judgment is affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and CASTLES concur.