No. 01-048

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 176

VIRGINIA CITY, a Municipal corporation,
and Political Subdivision of the State of Montana,

Plaintiff and Respondent,

v.

GREG OLSEN and PHILLIP MASON, JR.,

Defendants and Appellants.


APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

John P. Poston, Attorney at Law, Helena, Montana

For Respondent:

William A. Hritsco, Attorney at Law, Dillon, Montana


Submitted on Briefs: October 11, 2001

Decided:  August 8, 2002

Filed:


_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1   The town of Virginia City, Montana, brought this action in the Montana Fifth Judicial District Court, Madison County, to enjoin construction of a structure therein on Lots 11 and 12, Block 201, based upon alleged permit violations.  The District Court awarded summary judgment to Virginia City, permanently enjoined further construction on the lots, and ordered that the existing structure thereon be removed.  Greg Olsen ("Olsen"), the owner of the lots, and Phillip Mason, Jr., ("Mason"), the general contractor, appeal from the District Court's December 19, 2000, Judgment.  We reverse and remand for further proceedings consistent with this Opinion.

¶2   The following issue is dispositive of the appeal:

¶3   Did the District Court err in awarding Virginia City summary judgment without affording Olsen and Mason a hearing?

BACKGROUND

¶4   In the Spring of 1999, Mason, a general contractor and resident of Virginia City, agreed to assist Olsen in constructing a personal residence on Lots 11 and 12, Block 201, in Virginia City.  To construct a new structure in Virginia City, development and site zoning permits are required pursuant to Virginia City's Design and Site Zoning Ordinance ("Ordinance 503").  In May 1999, Mason applied for both permits on behalf of Olsen.

¶5   Upon Mason's request for permits, Virginia City's Historic Preservation and Enforcement Officer ("HPO"), Chandler Simpkins ("Simpkins"), directed Mason to provide a scaled plat indicating generally where and how the proposed structure would be situated on

2

the lots. In response to Simpkins' instruction, Mason prepared and submitted a drawing showing the dimensions of the structure and the proposed setbacks of the structure from Warren and Fairweather Streets, the two public streets abutting Olsen's lots. Additionally, Mason submitted two sketches illustrating plans for the exterior of the structure.

¶6 On June 15, 1999, the Virginia City Historic Preservation Advisory Committee ("HPAC") held a meeting to consider Mason's requests for permits. HPAC rejected Mason's sketch depicting the rear of the structure after reviewing his sketches for compliance with Ordinance 503, the "Design Review Guidelines for the Town of Virginia City, Montana" ("the Guidelines"), and the Virginia City Code, Titles 11 and 15 ("the Code"). HPAC supplanted Mason's sketch with its own illustrating the addition of decking on the rear of the structure and different windows. After visiting the lots and amending Mason's submitted sketch, HPAC approved the permits. As amended, the permit applications were approved by the Town Council on June 17, 1999. Mason commenced construction after receiving approval from the Town Council.

¶7 On or about July 26, 1999, residents of Virginia City orally complained that the structure was not in compliance with setback requirements. On August 3 and August 4, 1999, HPO, Carl Donahue ("Donahue"), investigated alleged setback violations by measuring the setback of the structure from Warren Street. Thereafter, Donahue advised Mason that he was allegedly in violation of setback requirements. On August 4, 1999, Olsen's neighbors submitted a

3

written complaint to the Virginia City Board of Adjustments stating that the structure did not appear to meet setback requirements.

¶8 On August 11, 1999, Donahue sent a written request to Mason to immediately cease construction. On August 13, 1999, the Town Council sent a letter to Olsen requesting that construction cease and that the parties meet to seek a resolution.

¶9 Virginia City commissioned a survey to measure the setbacks and the height of the structure. David Bowman ("Bowman") conducted the survey on August 21 and August 29, 1999.

¶10 On August 25, 1999, after obtaining the results of the survey, the Town Council revoked the building permits and sent notices to Olsen and Mason on August 26, 1999, stating that Virginia City was seeking an injunction to prevent further construction on the lots. On September 2, 1999, Virginia City filed a complaint and application for a preliminary injunction in the District Court against Olsen, as owner, and Mason, as Olsen's agent. The court held a show cause hearing on Virginia City's application for a preliminary injunction in Dillon, Montana, on September 9, 1999, and in Virginia City on September 14, 1999. On September 15, 1999, the District Court entered its Findings and Order granting Virginia City a preliminary injunction precluding further construction on the structure.

¶11 On April 27, 2000, Virginia City filed a motion for summary judgment. On May 1, 2000, Olsen and Mason filed a cross-motion for summary judgment. On October 20, 2000, the District Court entered its Findings and Order granting summary judgment to Virginia City.

4

On October 24, 2000, Olsen and Mason filed a motion to vacate the court's October 20, 2000, Order pending the completion of briefing and the filing of transcripts. Mason additionally filed a motion that same day requesting oral argument on the parties pending summary judgment motions. Shortly thereafter, the District Court stayed its October 20, 2000, Order and deemed oral argument unnecessary. On November 20, 2000, the District Court entered its Findings and Order reaffirming its award of summary judgment to Virginia City.

¶12 Judgment was entered by the court on December 19, 2000, enjoining further construction and ordering the removal of the structure. Olsen and Mason appeal.

### STANDARD OF REVIEW

¶13 We review discretionary trial court rulings for an abuse of discretion. *See Linn v. City County Health Dept.*, 1999 MT 235, ¶ 6, 296 Mont. 145, ¶ 6, 988 P.2d 302, ¶ 6 (citation omitted). Since we have previously held that a hearing is not necessary prior to granting summary judgment in extraordinary circumstances, we will review a district court's decision to deny such hearing for an abuse of discretion. *See Linn*, ¶ 6.

### DISCUSSION

¶14 Did the District Court err in awarding Virginia City summary judgment without affording Olsen and Mason a hearing?

¶15 Summary judgment is only proper when there are no issues of material fact revealed in the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, and the moving

5

party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Under Rule 56(c), M.R.Civ.P., "a hearing is contemplated from which the district court will consider not so much legal arguments, but rather whether there exists genuine issues of material fact." *Cole v. Flathead County* (1989), 236 Mont. 412, 418, 771 P.2d 97, 101. Therefore, we have held that in the ordinary case the parties have a right to a summary judgment hearing unless the hearing is explicitly waived. *Linn*, ¶ 8. We stated in *Cole*, 236 Mont. at 418, 771 P.2d at 101, that:

> In view of the language of Rule 56(c), and having in mind that the granting of such a motion disposes of the action on the merits, with prejudice, a district court may not, by rule or otherwise, preclude a party from requesting oral argument, nor deny such a request when made by a party opposing the motion unless the motion for summary judgment is denied.

¶16 Nevertheless, we have recognized that "[t]here may be an occasion when under the law and the facts adduced, the movant would be so clearly entitled as a matter of law to a summary judgment that a district court might by order dispense with the necessity of a hearing." *Cole*, 236 Mont. at 419, 771 P.2d at 101. Such an order was not presented to us in this case, as the court failed to specify the grounds underlying its summary judgment ruling.

¶17 Pursuant to Rule 52(a), M.R.Civ.P.:

> [A]ny order of the court granting a motion under Rules 12 or 56 which is appealable to an appellate court shall specify the grounds therefor with *sufficient particularity* as to apprise the parties and the appellate court of the rationale underlying the ruling and this may be done in the body of the order or in an attached opinion. [Emphasis added.]

¶18 In its September 15, 1999, Order the court stated:

6

> The construction seemed to violate the setback and height restrictions as well as window requirements.
>
> . . . .
>
> The defense was a mixture of multiple contentions ranging from an attack on the plat of the town site, *estoppel*, selective prosecution, validity of ordinances and policies, constitutional issues, procedures for measurements, among others. The Court finds generally for the Town and against the Defendants on each of the defenses, at least at this preliminary stage.

¶19 The court adopted its September 15, 1999, findings in its October 20, 2000, Order. Subsequently, the court stated in its November 20, 2000, Order that:

> If as Defendants now claim there is some "confusion" as to the various provisions of the zoning ordinance, why didn't Defendants apply for a variance as suggested not only by the town authorities but repeatedly by the Court. Defendants stonewalling tactics and insistence on pursuing senseless and expensive litigation is the anomaly in this case.

¶20 We conclude that this language fails to specify with sufficient particularity the rationale underlying the court's ruling, particularly the defenses raised in Olsen and Mason's cross-motion for summary judgment. Therefore, we hold that the District Court did not comply with Rule 52(a), M.R.Civ.P., in its November 20, 2000, Order granting Virginia City summary judgment.

¶21 Moreover, we point out that the court acknowledged in its September 15, 1999, Order that Olsen and Mason were entitled to an evidentiary hearing. However, in its October 20, 2000, Order and in its November 20, 2000, Order the court deemed a hearing unnecessary based on the evidence it adduced from the hearing it conducted on Virginia City's motion for a preliminary injunction. We note that at the hearing held on September 9 and September 14,

7

1999, the parties presented extensive testimony, witnesses, and exhibits without the benefit of full discovery and responsive pleading to Virginia City's amended complaint. Since discovery is seldom completed prior to the time preliminary injunction hearings are held, we have repeatedly advised district courts that when granting temporary relief by injunction, it is not the province of the court to determine matters that may arise during a trial on the merits. *See Knudson v. McDunn* (1995), 271 Mont. 61, 65, 894 P.2d 295, 298 (citing *Porter v. K & S Partnership* (1981), 192 Mont. 175, 183, 627 P.2d 836, 839).

¶22 In *Porter*, 192 Mont. at 183, 627 P.2d at 840, we stated:

> In granting temporary relief by injunction, courts of equity should in no manner anticipate the ultimate determination of the questions of right involved. Rather, the court should decide merely whether a sufficient case has been made out to warrant the preservation of the property or rights *in status quo* until trial, without expressing a final opinion as to such rights. An applicant need not make out such a case as would entitle him to final judgment on the merits. [Citations omitted].

¶23 Although the court stated in its October 20, 2000, Order that it considered the entire record, including extracts from depositions, in addition to the evidence adduced at the hearing held on September 9 and 14, 1999, it did not reference in either its October 20, 2000, Order or its November 20, 2000, Order the affidavits filed by Olsen and Mason, most notably that of Donahue. Consequently, in light of the court's noncompliance with Rule 52(a), M.R.Civ.P., we see no reason in this case to depart from the general rule that a party opposing a summary judgment motion is entitled to a hearing in order to establish genuine issues of

8

material fact pursuant to Rule 56(c), M.R.Civ.P. Therefore, we hold that the District Court abused its discretion when it granted Virginia City summary judgment without affording Olsen and Mason a hearing.

¶24 In response to Justice Trieweiler's dissent, we point out that Olsen and Mason allege within the first issue raised in their opening brief that the District Court erred in denying their motion for a summary judgment hearing. Specifically, they contend:

> The District Court also denied Olsen/Mason's motion for a hearing on the motions for summary judgment. Rule 56(c) clearly contemplates a hearing on such motions. In this case in particular, we submit that failure to hold such a hearing is error. Cole v. Flathead Co., 236 Mont. 412, 771 P.2d 97, 46 St. Rep. 469 (1980) [sic].

Accordingly, we conclude Olsen and Mason are entitled to a further evidentiary hearing prior to entry of a determination of the merits in this case since the only hearing afforded the parties took place before discovery was conducted or responsive pleadings were filed.

¶25 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

Justice Terry N. Trieweiler dissenting.

¶26  I dissent from the majority Opinion which, as I understand it, is based on the District Court's failure to hold a hearing before granting Virginia City's motion for summary judgment.

¶27  First, I would note as a practical matter that the District Court held two hearings at which all the arguments that could have been made at a summary judgment hearing were made.  Second, and more importantly, the District Court's failure to hold a hearing was not an issue that was even raised on appeal by the Defendants. Rule 23(2), M.R.App.P., requires that issues being presented for the Court's consideration be set forth in the statement of issues. In their statement of issues presented for review, the Defendants' brief set forth the following:

> Issue 1.  Did the District Court err by failing to enter Findings of Fact and Conclusions of Law with sufficient particularity to apprise the parties and this Court of the grounds for its grant of an injunction?
>
> Issue 2.  Did the District Court err in granting Summary Judgment for the plaintiff?
>
> Issue 3.  Did the District Court err in not entering Summary Judgment for Olsen and Mason?

¶28  The majority cites language in the last paragraph of the argument in support of Issue 1 as support for its consideration of the hearing issue.  However, that language, at best an afterthought, has nothing to do with Issue 1 as it was framed and Defendants' brief is full of random, unconnected arguments.  There was no way to reasonably respond without limiting the response to the issues that were identified.  Furthermore, the Defendants were perfectly happy to have this Court enter summary judgment for them

10

in spite of the fact that no hearing was held. Apparently, their theory was that they were entitled to judgment as a matter of law without the need for a hearing.

¶29 I would affirm the District Court on all issues raised on appeal. Rule 52(a), M.R.Civ.P., merely requires that a district court specify the grounds for summary judgment orders "with sufficient particularity as to apprise the parties and the appellate court of the rationale underlying the ruling. . . ." There is no question in my mind regarding the rationale for the District Court's summary judgment order. Following a hearing and the presentation of evidence, the District Court stated in its September 15, 1999, Order, that the Defendants violated the setback and height requirements established by city ordinance and the window requirements on which the Defendants' cite/zoning permit and development permit were conditioned.

¶30 Furthermore, the District Court noted that it had considered the Defendants' affirmative defenses and at that time found generally for the City. That was easy, since the Defendants' affirmative defenses of waiver, estoppel, latches and failure to exhaust administrative remedies had no basis in fact.

¶31 While it is true that the merits of a case should not be decided on the basis of a hearing to determine whether temporary injunctive relief should be granted, there was nothing wrong with the District Court incorporating its preliminary findings by reference after considering further deposition testimony, affidavits and arguments of the parties. That is all the District

11

Court did in its summary judgment order dated October 20, 2000. Apparently, the Defendants did not disagree that the case was ready for disposition by summary judgment at that point in time. The Defendants made their own motion for summary judgment based on the state of the record.

¶32 In its October 20, 2000, Order the Court stated:

> The Court has considered the entire record including extracts from depositions and the evidence adduced at the order to show cause hearing held on September 9 and 14, 1999. From the entire record the Court now makes what it determines to be relevant:

> <u>FINDINGS AND CONCLUSIONS</u>

> 1.  The Court hereby adopts by this reference its <u>Findings and Order</u> of September 15, 1999.

> . . . .

> 3.  The evidence already adduced establishes without question that the Defendants constructed a building in violation of the permit issued therefor and contemplated further construction in violation of the issued permit and the known historic preservation policy. The violations are obvious and for the most part admitted.

¶33 The District Court's judgment on the merits was correct. Virginia City is a community of great historical significance to all of Montana. In order to preserve its historical integrity, it has adopted Ordinance No. 503 which requires cite/zoning permits and development permits. Prior to issuance of the permits, an applicant must assure compliance with all relevant ordinances.

¶34 Virginia City's ordinance establishes a minimum setback requirement of fifty feet from the center line of the adjoining street and twenty-five feet from the lot line. The Defendants' property was thirty-one feet from the center line of the adjoining

street as plotted and thirty-eight feet from the center line of the traveled way. It was only six feet from the lot line. Whether the distance is measured from the street passing by the front of the house or the side of the house, the Defendants' construction was clearly in violation of the setback requirements established by the City's ordinance.

¶35 The City's ordinance also limits the height of new construction to twenty-five feet from the top of the foundation to the ridge line of the roof. The Defendant's property was 27.8 feet high and violated both the ordinance and the permits which were issued to them.

¶36 As conditions to the permits which were issued, Defendants were required to build their house in a configuration and size consistent with a historical design of homes in Virginia City. They were also required to design and locate windows in an architecturally acceptable manner. They did not comply with any of these requirements. There are no questions of fact regarding their failure to comply.

¶37 Section 27-19-102, MCA, provides in relevant part that a final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant where "(1) pecuniary compensation would not afford adequate relief; . . . ."

¶38 The facts presented by this case are a classic example of a situation in which compensation would not afford adequate relief. The historical value of places like Virginia City is priceless. Once it is compromised, it cannot be restored. Defendants' conduct

is a classic example of people coming to a place because of its attractiveness and then destroying the qualities that brought them there for their own self-indulgence. After reviewing the record in this case, I agree with the observation of the attorney for Virginia City when he commented that:

> The owners choose to purchase a lot and to build a house in a Historic Residential District in a town which is a jewel-a state and national treasure. What they have constructed to date is a hulking, rectangular box which seriously violates numerous conditions of its permit and which looms over the narrow Virginia City valley as an incredible eyesore. Each of the violations is serious, and to combine defective violations is nothing short of egregious.

¶39 The Defendants' construction violates Virginia City ordinances establishing setback and height requirements. It violates the permit pursuant to which it is being constructed by its design, its size, its shape, and fenestration requirements. No amount of litigation and expense will change these facts. Because of these facts, the construction jeopardizes the architectural and historical integrity of a priceless resource to the state of Montana and should be torn down without further delay or litigation.

¶40 I would affirm the judgment of the District Court and order that the Defendants do so.

¶41 For these reasons, I dissent from the majority Opinion.

/S/ TERRY N. TRIEWEILER